UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stephen Thomas Yelverton, Pro Se )<br>3033 Wilson Blvd., )<br>Suite E-117 )<br>Arlington, VA 22201 )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>Kirk Callan Smith, Esq. )<br>P.O. Box 654 )<br>Placerville, CA 95667 )<br>Defendant )<br>  for monetary damages as a )<br>    co-conspirator with )<br>    Hamilton P. Fox, III, )<br>    in his Individual and Official Capacity ) | Case: 1:15-cv-00552   Jury Demand<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 4/14/2015<br>Description: Pro Se Gen. Civil (F Deck)<br><br>DEMAND FOR JURY TRIAL |

<u>COMPLAINT FOR CONSPIRACY WITH A STATE ACTOR UNDER 42 U.S.C. 1983</u>

COMES NOW, Plaintiff Stephen Thomas Yelverton, Pro Se, and commences this Complaint against the Defendant, Kirk Callan Smith, Esq., in his Individual capacity, and demands compensatory monetary damages from him of at least $100,000, for Conspiracy with Hamilton P. Fox, III, in his Individual capacity and in his Official Capacity as an Assistant Bar Counsel for the Office of Bar Counsel, a state actor under 42 U.S.C. 1983, in violation of the Plaintiff's rights, privileges, and immunities established by the First and Fifth Amendments to the United States Constitution, and under the Fourteenth Amendment, as made applicable to actions in the District of Columbia under 42 U.S.C. 1983. The Complaint herein shows direct, concrete, particularized, and redressable "injury" to the Plaintiff establishing Article III "standing." The claims accrued within the three-year statute of limitations for Section 1983 violations in the District of Columbia. <u>Morris v. Carter Global Lee, Inc.</u>, 997 F.Supp.2d 27, 35 (D.D.C. 2013).

Jurisdiction is conferred under 28 U.S.C. 1331 and 28 U.S.C. 1343 (a) providing for Original Jurisdiction in civil actions arising under the United States Constitution and its laws, and moreover under 28 U.S.C. 1332 (a)(1) for Diversity Jurisdiction. The Plaintiff and the Defendant are residents of different states, and more than $75,000, in monetary damages is sought by the Plaintiff against the Defendant.

The District Court in the District of Columbia has proper Venue under 28 U.S.C. 1391 (b) in view of substantially all actions taking place with a state actor in the District of Columbia, and through interstate communications by Smith to the District of Columbia, and Smith being a resident of the District of Columbia prior to and during most of the time of his alleged actions, regularly doing legal business and continuing transactions there, and most of the witnesses being there.

A private individual, such as Smith, is subject to liability under Section 1983 if he willfully collaborated with an official state actor, such as Fox, in deprivation of a Federal Constitutional right. Dwares v. City of New York, 985 F.2d 94, 98 (2nd Cir. 1993).

Private activity will be considered "state action" if the state has so dominated such activity, or the private action has a "sufficiently close nexus" with the state, or the state provided such significant encouragement," or there was "joint participation" with the state, that the private action "may be fairly treated as that of the state itself." DeBauche v. Trani, 191 F.3d 499, 506-507 (4th Cir. 1999).

Private parties may be sued under Section 1983 using several theories in acting with state officials, such as "symbiotic relationship," "close or joint nexus," "joint participation," "jointly acting to produce the Constitutional injury," and "pervasive entwinement." McFayden v. Duke University, 786 F.Supp.2d 887, 928 (M.D.N.C. 2011).

To determine whether private individuals should be considered state actors for the purposes of liability under Section 1983, the District Court will consider (1) whether there is such a close nexus between the state and the challenged action that seemingly private behavior may be treated as that of the state itself; (2) whether the state has provided "significant encouragement" to the private action; and (3) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state. Harvey v. Mohammed, 841 F.Supp.2d 164, 185 (D.D.C. 2012).

To bring a Conspiracy claim under Section 1983, the Plaintiff "must allege both a mutual understanding to achieve some un-Constitutional action reached by the private and state defendants and some factual assertions suggesting a meeting of the minds," and where the private defendant must share with the public entity the goal of violating a plaintiff's Constitutional rights. McFayden v. Duke University, id., at 928.

To state a claim for a Section 1983 violation, the plaintiff must allege: (1) a violation of his rights under the Constitution or Federal law by a person acting under "color of state law," and (2) the violation was the result of a municipal policy or custom, and moreover must allege an "affirmative link," such that the municipal policy or custom was the moving force behind the Constitutional violation. Harvey v. Mohammed, id., at 184.

To form the basis for a municipal policy, its alleged custom or practice must be so "permanent and well-settled" as to constitute a "custom or usage with the force of law." To establish municipal liability under Section 1983, the plaintiff must show a "persistent, pervasive practice of officials ...., which although not officially adopted, was so common and settled as to be considered a custom or policy. Harvey v. Mohammed, id., at 187.

3

"Inaction may constitute the adoption of a municipal policy when the failure to prevent the violation of Constitutional rights is premised upon proof of the deliberate indifference to the violation of those rights," and as such, "inaction, including the failure to train or supervise its employees adequately, constitutes a policy or custom under Monell when it can be said that the failure amounts to deliberate indifference towards the Constitutional rights of persons in its domain," and where it must be proven that the "municipality knew or should have known of the risk of Constitutional violations, an objective standard Winstead v. District of Columbia, 840 F.Supp.2d 149, 152 (D.D.C. 2012).

The Office of Bar Counsel, which investigates and prosecutes attorney members of the D.C. Bar for alleged violation of the Rules of Professional Conduct, is a unit of the District of Columbia Courts of Appeals, which is armed with the "judicial power over non-Federal subject matter in the District of Columbia" and is the "arbiter of local law" in the District of Columbia. Feldman v. Gardner, 661 F.2d 1295, 1307-1308 (D.C. Cir. 1981), rev. on other grounds, D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

The District of Columbia is a "municipality" for purposes of applicability of 42 U.S.C. 1983 under the Fourteenth Amendment. Brown v. District of Columbia, 514 F.3d 1279, 1283-1284 (D.C. Cir. 2008).

Under Section 1983, Smith may be held liable for Conspiracy with Fox and the Office of Bar Counsel for Constitutional torts arising from actions of the Office of Bar Counsel that are its official policy, or practices so persistent and widespread as to practically have the force of law, and such caused the violations of Constitutional rights. Brown v. Wilhelm, 819 F.Supp.2d 41, 44 (D.D.C. 2011).

4

If a Plaintiff, such as Yelverton, is <u>not</u> a member of a protected class, but is arbitrarily and intentionally treated differently from others who arte similarly situated --- and the state has <u>no</u> rational basis for the disparity ---the individual may qualify as a "class of one" and be entitled to pursue a denial of equal opportunity claim. <u>Kelley v. District of Columbia</u>, 893 F.Supp.2d 115, 122 (D.D.C. 2012).

Neither Smith, Fox, nor the Office of Bar Counsel would be entitled to qualified immunity where the Constitutional right that was violated was "sufficiently established that a reasonable person would have known the conduct violated the Constitution," and the "unlawfulness of the action was apparent in light of pre-existing law." <u>Ford v. Donovan</u>, 891 F.Supp.2d 60, 64 (D.D.C. 2012).

The "bad faith" investigation and prosecution of an attorney for supposed Bar disciplinary infractions is a violation under Section 1983 because an attorney enjoys a "Constitutional right to be free from investigation or prosecution initiated <u>without</u> probable cause," and need "<u>not</u> endure" it. <u>Bishop v. State Bar of Texas</u>, 736 F.2d 292, 294, n. 1 (5th Cir. 1984).

"Retaliatory prosecution" with <u>no</u> probable cause is a Constitutional violation under Section 1983. <u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1255 and 1257, and n. 93 (D.C. Cir. 1987).

Being "singled out" for "selective prosecution" is a Constitutional violation under Section 1983. <u>Branch Ministries v. Rossotti</u>, 211 F.3d 137, 144 (D.C. Cir. 2000).

Bar officials may be sued under Section 1983 for Constitutional violation, where in investigating or prosecuting ethics violations there is "bad faith" or "harassment" of an attorney. <u>Middlesex Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 435 (1982).

5

The Office of Bar Counsel was put on notice in In Re Sablowsky, 529 A.2d 289 (D.C. 1987), of the lack of Constitutionality of its long-time practice of "deputizing" private attorneys to independently obtain evidence against their opposing counsel of supposed unethical conduct in order provide to Bar Counsel to use to bring charges against a targeted attorney, and where sometimes the "deputized" attorney acts as an "agent provocateur." It has never taken action to end this practice.

The Rooker-Feldman Doctrine does not apply to Section 1983 Constitutional claims for monetary damages, and thus would not apply to the monetary claims in this suit. Gray v. Poole, 275 F.3d 1113, 1119 (D.C. Cir. 2002).

The Rooker-Feldman Doctrine does not apply to the Constitutional violations by Smith, Fox, and the Office of Bar Counsel that occurred in April 2012, and after, which was after the Bar disciplinary Hearing ended in February 2012, with the alleged violations being outside the Record of the Hearing, and thus not heard by the District of Columbia Court of Appeals, and independent of its decision. Stanton v. District of Columbia, 127 F.3d 72, 75-76 (D.C. Cir. 1997), the Rooker-Feldman Doctrine does not apply to injuries whose "discernable core" is independent of the state judgment.

The Rooker-Feldman Doctrine is not applicable because no causes of action against Smith were heard by the District of Columbia Court of Appeals, and it made no decision based upon the allegations of facts and transactions herein. Skinner v. Switzer, 131 S.Ct. 1289, 1297 (2011), holds the Rooker Feldman Doctrine is strictly confined only to "state court losers" seeking rejection and reversal by the Federal court of a final adverse state judgment, and where the damages are from the judgment itself. See also, Hunter v. U.S. Bank Nat. Ass'n, 698 F.Supp.2d 94, 99 (D.D.C. 2010).

There is no applicability of Res Judicata from dismissal of the Section 1983 suit against Fox and the Office of Bar Counsel in Case No. 13-cv-314-RWR. The dismissal was solely on the basis of Younger Abstention from jurisdiction. Such dismissal on jurisdictional grounds is without the claims being Res Judicata on the merits.

There is no applicability of Res Judicata in view of the decision of the District of Columbia Court of Appeals not hearing and resolving any claims or transactions for or against Smith, and where no claims could have been brought against Smith for momentary damages. Restatement(Second)Judgments, Section 26 (1)(c), cmt c, there is no claims preclusion or Res Judicata, where the claims could not have been brought in the earlier proceeding.

The dismissal of the Removal action of the Bar disciplinary proceeding in Case No. 11-mc-00669-RLW was moreover for lack of jurisdiction, and thus there is no Res Judicata as to the merits of the claims in that proceeding, or as to jurisdiction in this Complaint. Jurisdiction is based upon new facts occurring after 2011. Dozier v. Ford Motor Co., 702 F.2d 1189, 1192 (D.C. Cir. 1983).

The Doctrine of Collateral Estoppel is inapplicable because the District of Columbia Court of Appeals declined to hear and resolve any Constitutional claims or allegations of facts as to actions by Smith. Yamaha Corp. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), only where the issue has been fully litigated and determined by a final judgment as to that issue, would Collateral Estoppel be applicable.

## Allegations of the Facts

1. The Plaintiff, Stephen Thomas Yelverton, is licensed to practice by the District of Columbia Court of Appeals (Bar No. 264044, granted April 10, 1979, on reciprocity),

2. Yelverton has practiced for 40 years with an <u>unblemished</u> record, has been rated AV Preeminent by Martindale for the highest in legal ethics and legal ability, and has an extensive record of Pro Bono service to African-Americans and Ethiopians.

3. The Defendant, Kirk Callan Smith, is a private attorney licensed by the District of Columbia Court of Appeals, who has been practicing and living in the District of Columbia for over 30 years, and through mid-2012 until moving to California.

4. Smith had been informally acting for some 20 years on an independent basis as an "informant" and outside "investigator" for the Office of Bar Counsel to bring to it allegations or evidence of ethical violations by members of the Bar, who had been "targeted" by the Office of Bar Counsel for prosecution, or to make unofficial investigations of members of the Bar on his own behalf to provide to the Office of Bar Counsel for prosecution, in order for it to have a steady flow of cases to prosecute.

5. The Office of Bar Counsel received notice in 1987 that the above-noted and similar practices of "deputizing" outside private attorneys to do its work of investigations, and where the investigations by "deputized" outside private attorneys of their opposing attorneys, was in violation of the Constitutional rights of the attorneys being investigated. See, In Re Sablowsky, 529 A.2d 289 (D.C. 1987).

6. There is <u>no</u> evidence that the Office of Bar Counsel has ever ended the above-noted and similar practices of "deputizing" outside private attorneys to be "agent provocateurs" and to investigate their opposing attorneys for prosecution by Bar Counsel.

7. The function of the Office of Bar Counsel is to regulate the practice of law in the District of Columbia and to discipline attorneys under the Bar Rules, which have the force of local law, and where it is a unit of the District of Columbia Court of Appeals.

8. Upon information and belief, Fox served at all relevant times from May 2009 until the present as Assistant Bar Counsel for the Office of Bar Counsel, and at all relevant times acted under color of state law and under the authority of the Office of Bar Counsel, and all such actions of his were knowingly encouraged, approved, and adopted by the Office of Bar Counsel as its own policies and customs.

9. Rebecca Landrith, a former client of Yelverton, executed on June 8, 2012, an Affidavit, under penalty of perjury, that Smith, Fox, and the Office of Bar Counsel had been acting in concert to pressure her to provide evidence of any possible misconduct by Yelverton, and that they had been acting in concert to "retaliate" against Yelverton.

10. The above noted actions by Smith, Fox, and the Office of Bar Counsel to pressure Ms. Landrith were in April-May 2012, and afterward, which was after the Bar disciplinary Hearing against Yelverton had ended in February 2012.

11. Fox sent Ms. Landrith an e-mail stating that he was angry at her for disclosing the above noted matters to Yelverton, and continued to pressure her to provide adverse and damaging information to use against Yelverton for post-Hearing charges of any possible misconduct by him.

12. In late June 2012, Fox and Smith pressured Ms. Landrith to send e-mails to Yelverton to inquire as to his relationship with his separated wife, his financial status, his lifestyle and friends, his political activities, his other client matters, his client relationship with Michael Snow, who Smith was engaging in a personal vendetta, and Yelverton's knowledge and evidence as to specific criminal misconduct by Smith against Ms. Landrith in May-June 2009, when they were in a personal relationship, and where Yelverton had assisted Ms. Landrith in filing criminal charges against Smith.

13. In late June 2012, Ms. Landrith, at the demand of Fox and Smith through their e-mails and telephone calls, began barraging Yelverton with hundreds of e-mails and telephone calls, at 20 or more per day and late at night. When Ms. Landrith she did not obtain the information that Smith and Fox wanted, she became argumentative and accusative, and her e-mails and telephones calls to Yelverton turned acrimonious.

14. Ms. Landrith admitted to Yelverton that she had forwarded the e-mail responses of Yelverton to Smith and Fox. This was readily apparent in the questions that she had been asking to Yelverton were of no relevance to her, and were posed as "trap" questions.

15. On July 9, 2012, under pressure from Smith and Fox, Ms. Landrith filed with MPD a criminal complaint against Yelverton for supposed "e-mail stalking" of her in violation of D.C. Code, Section 22-3133 (a). According to the Complaint, Yelverton had been sending to her hundreds of unwanted e-mails in response to her e-mails.

16. The MPD Detective who was assigned to the Complaint was called by Fox to come to the Office at Bar Counsel to "get background information on the suspect [Yelverton]" and was told by Fox and the Office of Bar Counsel that Yelverton is a "nasty SOB, who thinks that he is above the law."

17. In August 2012, Yelverton was informed by MPD that on the demand of Fox and the Office of Bar Counsel that it has referred the criminal complaint of Ms. Landrith to the U.S. Attorney. The matter remains pending and Yelverton has no knowledge that the case has been closed.

18. Yelverton has been living in fear since 2012 this criminal complaint instigated by Smith, Fox, and the Office of Bar Counsel will be used to "retaliate" against him.

19. The basis of the past "retaliation" against Yelverton is he has been challenging as "bogus" the Office of Bar Counsel's Charges against him that were commenced on July 11, 2011, at the demand of Smith, who is not a recognized Complainant.

20. On May 13, 2011, Smith had sent Fox a personal e-mail at the Office of Bar Counsel, where Smith demanded that Charges be brought against Yelverton for actions in 2009, and where Fox quickly complied with Smith's demand made on May 13, 2011, within two months thereafter.

21. Smith wanted to discredit and injure Yelverton for assisting Ms. Landrith in filing a criminal complaint against him in June 2009, and for Yelverton filing with the D.C. Superior Court an ethics misconduct complaint against Smith in September 2009, where Smith had been engaging in "gay bashing" and "witness intimidation" against a witness in a criminal proceeding who was Yelverton's client, and who had testified against Smith's client, and where Yelverton had submitted new evidence of new and different criminal misconduct by Smith's client that had not been previously prosecuted.

## Demand for Relief

Yelverton incorporates the Allegations of Facts in paragraphs 1-21, and Demands compensatory damages of at least $100,000, from Smith for him acting in a Conspiracy with Hamilton P. Fox, III, in his Individual and Official Capacity as Assistant Bar Counsel, under 42 U.S.C. 1983 to violate the Constitutional rights of Yelverton under the First, Fifth, and Fourteenth Amendments by "retaliation" to injure Yelverton for makin ethics and criminal complaints against Smith, and Smith was improperly allowed to u the official machinery of the Office of Bar Counsel to inflict injury on Yelverton, where the claims accrued on June 8, 2012, when Yelverton received Landrith's affida

### Demand for Jury Trial

Plaintiff demands a Trial by Jury.

### Other Demands

Plaintiff demands, pursuant to 42 U.S.C. 1988 (b), the right to reasonable attorneys fees, and any and all other appropriate Relief as determined by the Court.

Plaintiff will be engaging counsel prior to the commencement of Discovery.

### Verification

I, Stephen Thomas Yelverton, Pro Se, the Plaintiff, hereby Verify that the foregoing allegations of facts are true and correct, and are believed to be true and correct, to the best of my knowledge and belief, and based upon information and belief, and that this Complaint is filed in good faith to protect my interests from Constitutional violations by Fox and the Office of Bar Counsel, who have been acting on behalf of and at the demand of Smith to enable and facilitate his "retaliation" to injure me and my interests.

Respectfully submitted,

This the 18th day of March, 2015,

Stephen Thomas Yelverton, Plaintiff Pro Se
3033 Wilson Blvd., Suite E-117
Arlington, VA 22201
Tel. 202-702-6708 (mobile)
Fax: 202-403-3801
E-mail styelv@aol.com

Service of Summons on:
Kirk Callan Smith, Esq.
P.O. Box 654
Placerville, CA 95667
Tel. 530-503-7400 or 530-626-7714
Home address not publicly disclosed