UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Stephen Thomas Yelverton, *Pro Se* | ) | |
| Plaintiff | ) | |
| | ) | Case No. 1:15-cv-00552-TSC |
| v. | ) | |
| | ) | |
| Kirk Callan Smith, Esq. | ) | |
| Defendant | ) | |

OPPOSITION TO MOTION TO DISMISS COMPLAINT

COMES NOW, Plaintiff Stephen Thomas Yelverton, *Pro Se*, pursuant to the *Order*, entered July 22, 2016, at Docket No. 15, and timely submits his Opposition to Motion to Dismiss for Failure to State a Claim, filed July 14, 2016, by the Defendant, pursuant to FRCP, Rule 12 (b). The due date for the Opposition is August 15, 2016.

Statement of the Facts

1. On July 25, 2016, the Plaintiff timely filed with the Clerk, U.S. District Court, an Amended Pleading of Right, pursuant to FRCP, Rule 15 (a)(1)(B). It was timely served on Defendant Smith by at least August 1, 2016. An accompanying Motion with respect to the Amended Pleading of Right was timely filed on August 8, 2016, and was served on Defendant Smith on that date. The service was by e-mail and by U.S. Mail, first class, postage pre-paid. Under FRCP, Rule 15 (a)(1)(B), the due date for an Amended Pleading of Right was August 8, 2016. See also, FRCP, Rule 6 (a)(1)(C) and (d).

The Motion to Dismiss is Moot

2. When an Amended Pleading of Right is timely filed, pursuant to FRCP, Rule 15 (a)(1)(B), it "supersedes" the original Complaint, and the pending Motion to Dismiss the original Complaint is thus moot. The Amended Pleading is now the "operative" Complaint. Barnes v. District of Columbia, 42 F.Supp.3d 111, 117 (D.D.C. 2014).

RECEIVED

AUG 1 5 2016

Clerk, U S District & Bankruptcy

3.  The established rule of law that the original Complaint is "superseded" by an Amended Pleading, which is the "operative" Complaint, and that the pending Motion to Dismiss the original Complaint is thus moot, is also found in <u>Adams v. Quattlebaum</u>, 219 F.R.D. 195, 197 (D.D.C. 2004); <u>National City Mortgage v. Navarro</u>, 220 F.R.D. 102, 106 (D.D.C. 2004); and <u>Scott-Blanton v. Universal City</u>, 244 F.R.D. 67, 69-70 (D.D.C. 2007).

4.  With the pending Motion to Dismiss being moot, it is a nullity and therefore there are no arguments to otherwise address or respond.

5.  The District Court lacks discretion to reject the Amended Pleading that is filed of Right under FRCP, Rule 15 (a)(1)(B).  It is simply accepted as filed and entered into the Docket.  <u>Villery v. District of Columbia</u>, 277 F.R.D. 218, 219-221 (D.D.C. 2011). See also, <u>Scott-Blanton</u>, id., at 69-70, the District Court lacks discretion to reject the Amended Pleading of Right based upon "futility."

6.  Under FRCP, Rule 15 (a)(3), the Defendant has the opportunity to file a responsive pleading or motion under FRCP, Rule 12 (b), with respect to the Amended Pleading of Right.  It is that subsequent motion by the Defendant which the Plaintiff must fully respond, or be in default under LCvR, Rule 7 (b).

WHEREFORE, in view of the foregoing, this Opposition to Motion to Dismiss is timely submitted. The pending Motion to Dismiss is moot because the original Complaint is superseded by the Amended Pleading, which is the operative Complaint. Thus, there is nothing more to address with respect to the pending Motion to Dismiss, which is moot and thereby a nullity.

The Amended Pleading of Right, which was timely filed on July 25, 2016, and the accompanying Motion, which was timely filed on August 8, 2016, are attached hereto.

This the 15th day of August, 2016,

Respectfully submitted,

Stephen Thomas Yelverton, *Pro Se*,
3033 Wilson Blvd., #E-117
Arlington, VA  22201
Tel. 202-702-6708 (mobile)
E-Mail  styelv@aol.com

EXHIBIT

Amended Pleading of Right which was timely filed on July 25, 2016, per FRCP, Rule 15
(a)(1)(B), and the accompanying Motion which was timely filed on August 8, 2016

RECEIVED

AUG 0 8 2016

Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stephen Thomas Yelverton, *Pro Se*  )
        Plaintiff  )
                )   Case No. 1:15-cv-00552-TSC
        v.  )
                )
Kirk Callan Smith, Esq.  )
        Defendant  )

## MOTION RE: AMENDED COMPLAINT OF RIGHT AND ADDITION OF PARTY OF RIGHT

COMES NOW, Plaintiff Stephen Thomas Yelverton, *Pro Se*, pursuant to LCvR, Rule 7 (a), and FRCP, Rule 15 (a)(1)(B), and hereby timely submits this Motion with respect to his Amended Complaint of Right and Addition of Party of Right, which was timely filed with the Clerk, U.S. District Court, on July 25, 2016. The Amended Civil Cover Sheet was timely submitted to the Clerk on July 28, 2016. Both the Amended Complaint of Right and Addition of Party of Right and the Amended Civil Cover Sheet, as initially filed with <u>no</u> changes thereto, are attached to this Motion.

Although FRCP, Rule 15 (a)(1)(B), by its terms does <u>not</u> require a Motion to be filed for an Amended Complaint of Right and Addition of Party of Right, this Motion is being timely submitted out of an abundance of caution.

Under FRCP, Rule 15 (a)(1)(B), a Plaintiff may Amend his pleading once as a matter of course within 21 days after service of a Motion by the Defendant under FRCP, Rule 12 (b). Defendant Smith served such Motion on Thursday, July 14, 2016. Thus, the Plaintiff's due date for his Amendment of Right is Monday, August 8, 2016, which includes 3 days for mail service, pursuant to FRCP, Rule 6 (a)(1)(C) and (d).

1

## Statement of the Facts

1.  Plaintiff timely Amended his Complaint of Right and Addition of Party of Right and filed it with the Clerk, District Court, on July 25, 2016. The Defendant was timely served through his counsel of record by at least August 1, 2016, which was done by e-mail and by U.S. Mail, first class, postage pre-paid.

2.  A Summons to be issued for Hamilton P. Fox, III, in his Official Capacity, was timely provided to the Clerk, District Court, on Thursday, July 28, 2016.

### Law in the D.C. Circuit as to an Amended Pleading of Right

3. The Plaintiff is "guaranteed" an "absolute right" to Amend his Complaint once as a matter of course "so long as the Defendant has not served a responsive pleading and the District Court has not decided a Motion to Dismiss." Additionally, the Plaintiff is allowed by FRCP, Rule 15 (a), to Amend his Complaint to add a new party. Scott-Blanton v. Universal City, 244 F.R.D. 67, 69-70 (D.D.C. 2007); Adams v. Quattlebaum, 219 F.R.D. 195, 196 (D.D.C. 2004). See also, National City Mortgage v. Navarro, 220 F.R.D. 102, 104-105 (D.D.C. 2004), a Motion to Dismiss is not a responsive pleading.

4.  The District Court "lacks the discretion to reject" the Amended Complaint of Right and Addition of Party of Right. Scott-Blanton, id. The Amended Pleading is "simply accepted as filed," and is entered into the Docket as such. Villery v. District of Columbia, 277 F.R.D. 218, 220-221 (D.D.C. 2011).

5.  The Amended Pleading "supersedes" Plaintiff's original Complaint, and the pending Motion to Dismiss the original Complaint is moot. The Amended Pleading is now the "operative" Complaint. Barnes v. District of Columbia, 42 F.Supp.3d 111, 117 (D.D.C. 2014); National City Mortgage, id., at 106.

6.  The addition as a Defendant of Hamilton P. Fox, III, in his Official Capacity as Assistant Disciplinary Counsel for the Office of Disciplinary Counsel, meets the requirements of FRCP, Rule 20, to add a party.

7.  Fox may be joined as a Defendant because a right to relief is asserted against him and Defendant Smith both jointly and severally, with respect to and arising out of the same transactions, occurrences; and there are common questions of law and fact as to both.  See, FRCP, Rule 20 (a)(2)(A) and (B).

8.  Under FRCP, Rule 15 (a)(3), the Defendant is allowed to respond to the Amended Pleading within 14 days after service (plus 3 days for mail).

9.  With the Amended Pleading of Right required to be accepted as filed, any challenge to it, such as jurisdiction, standing, immunity, res judicata, service of summons, or other purported deficiencies, is done in a motion under FRCP, Rule 15 (a)(3).

WHEREFORE, in view of the foregoing, this Motion is timely submitted with respect to the Plaintiff's Amended Complaint of Right and Addition of Party of Right, and it is required to be timely entered into the public Docket, as filed, and this Amended Pleading is the "operative" Complaint to be heard and acted upon.

The Amended Pleading of Right, as previously and timely filed with the Clerk, District Court, on July 25, 2016, is attached hereto, and is re-signed as an original.

This the 8th day of August, 2016,

Respectfully submitted,

Stephen Thomas Yelverton, *Pro Se*,
3033 Wilson Blvd., #E-117
Arlington, VA  22201
Tel. 202-702-6708 (mobile)
E-Mail styelv@aol.com

*Amended*

**CIVIL COVER SHEET**

*for CASE NO. 1:15-cv-00552-TSC*

JS-44 (Rev. 7-16 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Stephen Thomas Yelverton, Esc. <br> 2033 Wilson Blvd, # E-117 <br> Arlington, VA 22201 <br> code # 43888 | Kirk Callan Smith <br> 3173 Sacramento St. <br> Placerville, CA 95667 <br> Hamilton P. Fox, III <br> Office of Disciplinary Counsel <br> 515 Fifth St. NW, Bldg. A, Room 117 <br> Washington, DC 20001 *for Smith only* |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Arlington County**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **95667**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
SAME AS Above
202-709-6792 (m)
stthely@aol.com

ATTORNEYS (IF KNOWN)
Matthew M. Sheridan, Esq.
1504 N. Oak St. Suite 1816
Arlington, VA 22209
*for Kirk Callan Smith only*

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE an x IN ONE BOX FOR
PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

Other Statutes
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)** OR **● F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)

Forfeiture/Penalty
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

Other Statutes
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce ICC Rates etc.
☐ 460 Deportation
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable Satellite TV
☐ 850 Securities Commodities Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☑ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)
42 U.S.C. 1983

| O  G.  *Habeas Corpus/ 2255* | O  H.  *Employment Discrimination* | O  I.  *FOIA/Privacy Act* | O  J.  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| O  K.  *Labor/ERISA (non-employment)* | O  L.  *Other Civil Rights (non-employment)* | O  M.  *Contract* | O  N.  *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi-district Litigation  O 7 Appeal to District Judge from Mag. Judge  O 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*42 U.S.C. 1983     Claims under First and Fifth Amendment and 11 USC 362*

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** <br> **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒    NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐    NO ☒ | *Same as 1:15-cv-00554-TSC*<br>If yes, please complete related case form |
|---|---|---|---|

DATE: *7/25/2016*     SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.     CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stephen Thomas Yelverton, *Pro Se* ) | |
| 3033 Wilson Blvd., # E-117 ) | |
| Arlington, VA 22201 ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No.  1:15-cv-00552-TSC |
| ) | |
| Kirk Callan Smith, Esq. ) | |
| 3273 Sacramento St, ) | |
| Placerville, CA 95667 ) | |
| co-Defendant ) | DEMAND FOR JURY TRIAL |
| ) | |
| in his Individual Capacity and in his ) | |
| Official Capacity for the Office of ) | |
| Disciplinary Counsel for the ) | |
| District of Columbia ) | |
| ) | |
| and ) | |
| ) | |
| Hamilton P. Fox, III, ) | |
| Office of Disciplinary Counsel ) | |
| 515 Fifth St., N.W., Bldg. A, Room  117 ) | |
| Washington, DC 20001 ) | |
| co-Defendant ) | |
| in his Official Capacity  as ) | |
| Assistant Disciplinary Counsel ) | |
| for the District of Columbia ) | |

AMENDED COMPLAINT OF RIGHT FOR CONSPIRACY WITH A STATE ACTOR
UNDER 42 U.S.C. 1983 AND TO ADD PARTY AND FOR ALTERNATIVE CLAIMS

COMES NOW, Plaintiff Stephen Thomas Yelverton, *Pro Se*, and pursuant to Fed.

R. Civ. Pr., Rule 15 (a)(1)(B), timely Amends of Right his Complaint against the

Defendant, Kirk Callan Smith, Esq., and demands monetary damages of at least

$150,000, for Conspiracy with Hamilton P. Fox, III, in his Official Capacity as Assistant

Disciplinary Counsel for the Office of Disciplinary Counsel, a state actor under 42 U.S.C.

1983, in violation of the Plaintiff's rights established by the First and Fifth Amendments.

An Amendment of Right is allowed within twenty-one (21) days of the Defendant's Motion to Dismiss per Rule 12 (b)(6), which was filed on July 14, 2016. Pursuant to FRCP, Rule 15 (c)(1)(B), this Amendment "relates back" to the original Complaint as to the Statute of Limitations.

With the filing of this Amended Complaint of Right, the original Complaint is <u>no</u> longer operative, and the Motion to Dismiss, filed July 14, 2016, is now Moot. As stated in the 2009 Advisory Committee Notes to FRCP, Rule 15, a "responsive" Amendment [such as filed by the Plaintiff] may avoid the need to decide the motion [to dismiss] or reduce the number of issues decided, and will expedite the determination [of the proceeding]."

Pursuant to FRCP, Rule 15 (a)(3), Defendant Smith has up to fourteen (14) days after service on him of this Amended Complaint of Right, to file a FRCP, Rule 12 (b), response to it, or a responsive pleading.

The purpose of this Amendment of Right is to add an necessary party, to add alternative claims, and to plead with clarity that the claims are alleged against Defendant Smith, a private actor, for acting in concert with Fox, a state actor with the Office of Disciplinary Counsel, to foment Rebecca Landrith in April-May 2012, and afterwards, to pursue an unfounded criminal complaint with the MPD against Plaintiff Yelverton for alleged "E-mail stalking" of Landrith, and where Defendant Smith did so to "retaliate" against Plaintiff Yelverton for having previously assisted Landrith in filing ethics Complaints with the Office of Disciplinary Counsel against Defendant Smith in 2009-2010. These allegations of "retaliation" by Defendant Smith against Plaintiff Yelverton are based upon the Affidavit of Landrith, executed June 8, 2012.

2

The claims are <u>not</u> being made because of Defendant Smith making ethics complaints in 2009-2011 against Plaintiff Yelverton at the Office of Disciplinary Counsel, which resulted in Specification of Charges.  It has repeatedly stated that these ethics complaints were <u>not</u> brought against Plaintiff Yelverton by Defendant Smith, but rather were brought by other unnamed persons with <u>no</u> involvement by Defendant Smith.

This Amended Complaint of Right moreover alleges facts showing that Defendant Smith has <u>no</u> entitlement as a private actor to Absolute or Qualified Immunity.

This Amended Complaint of Right shows direct, concrete, particularized, and redressable "injury" to Plaintiff establishing Article III "standing."   The claims accrued within the three-year statute of limitations for Section 1983 violations in the District of Columbia.  <u>Morris v. Carter Global Lee, Inc.</u>, 997 F.Supp.2d 27, 35 (D.D.C. 2013).

Jurisdiction is conferred under 28 U.S.C. 1331 and 28 U.S.C. 1343 (a) providing for Original Jurisdiction in civil actions arising under the United States Constitution and its laws, and moreover under 28 U.S.C. 1332 (a)(1) for Diversity Jurisdiction. The Plaintiff and the Defendants are residents of different states, and more than $75,000, in monetary damages is sought by the Plaintiff against the Defendants.

 The District Court in the District of Columbia has proper Venue under 28 U.S.C. 1391 (b) in view of substantially all actions taking place with Fox, a state actor in the District of Columbia, and through interstate communications by Smith to the District of Columbia, and Smith being a resident of the District of Columbia prior to and during much of the time of his alleged actions, regularly doing legal business and continuing transactions there, and most of the witnesses being there.

Landrith is <u>not</u> named as a party, but is a key witness.

3

A private individual, such as Smith, is subject to liability under Section 1983 if he willfully collaborated with a state actor, such as Fox, in deprivation of a Federal Constitutional right. Dwares v. City of New York, 985 F.2d 94, 98 (2nd Cir. 1993). Private activity will be considered "state action" if the state has so dominated such activity, or the private action has a "sufficiently close nexus" with the state, or the state provided such significant encouragement," or there was "joint participation" with the state, that the private action "may be fairly treated as that of the state itself."

Private parties may be sued under Section 1983 using several theories in acting with state officials, such as "symbiotic relationship," "close or joint nexus," "joint participation," "jointly acting to produce the Constitutional injury," and "pervasive entwinement." McFayden v. Duke University, 786 F.Supp.2d 887, 928 (M.D.N.C. 2011).

To determine whether private individuals should be considered state actors for the purposes of liability under Section 1983, the District Court will consider (1) whether there is such a close nexus between the state and the challenged action that seemingly private behavior may be treated as that of the state itself; (2) whether the state has provided "significant encouragement" to the private action; and (3) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state. Harvey v. Mohammed, 841 F.Supp.2d 164, 185 (D.D.C. 2012).

To bring a Conspiracy claim under Section 1983, the Plaintiff "must allege both a mutual understanding to achieve some un-Constitutional action reached by the private and state defendants and some factual assertions suggesting a meeting of the minds," and where the private defendant must share with the public entity the goal of violating a plaintiff's Constitutional rights. McFayden v. Duke University, id., at 928.

4

To state a claim for a Section 1983 violation, the plaintiff must allege: (1) a violation of his rights under the Constitution or Federal law by a person acting under "color of state law," and (2) the violation was the result of a municipal policy or custom, and moreover must allege an "affirmative link," such that the municipal policy or custom caused or was the moving force behind the Constitutional violation. Harvey v. Mohammed, id., at 184.

A private actor may act under "color of state law," even though not a state official Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). To act "under color" of law does not require that the accused be an officer of the state, it is enough that he is a willful participant in joint activity with the state, or its agents. U.S. v. Price, 383 U.S. 787, 794 (1966). See also, Adickes v. S&H Kress Co., 398 U.S. 144, 152 (1970).

To form the basis for a municipal policy, its alleged custom or practice must be so "permanent and well-settled" as to constitute a "custom or usage with the force of law." To establish municipal liability under Section 1983, the plaintiff must show a "persistent, pervasive practice of officials ...., which although not officially adopted, was so common and settled as to be considered a custom or policy. Harvey v. Mohammed, id., at 187.

"Inaction may constitute the adoption of a municipal policy when the failure to prevent the violation of Constitutional rights is premised upon proof of the deliberate indifference to the violation of those rights," and as such, "inaction, including the failure to train or supervise its employees adequately, constitutes a policy or custom under Monell when it can be said that the failure amounts to deliberate indifference towards the Constitutional rights of persons in its domain." Winstead v. District of Columbia, 840 F.Supp.2d 149, 152 (D.D.C. 2012).

The District of Columbia, including its agencies and units, is a "municipality" for purposes of applicability of 42 U.S.C. 1983. <u>Brown v. District of Columbia</u>, 514 F.3d 1279, 1283-1284 (D.C. Cir. 2008). The Office of Disciplinary Counsel and the District of Columbia Court of Appeals is an agency or unit of the District of Columbia municipal government. <u>Kundrat v. District of Columbia</u>, 106 F.Supp.2d 1, 4-5 (D.D.C. 2000).

A suit against Fox, or any employee, in his Official Capacity is a suit against the District of Columbia. <u>Kentucky v. Graham</u>., 473 U.S. 159, 165-166 (1985). In a Section 1983 action, there is <u>no</u> required notice to the Mayor under D.C. Code, Section 12-309. <u>Harvey v. District of Columbia</u>, 798 F.3d 1042, 1054 (D.C. Cir. 2015).

Under Section 1983, Smith may be held liable for Conspiracy with Fox and the Office of Disciplinary Counsel for Constitutional torts arising from actions of that Office which are its official policy, or customs so persistent and widespread as to practically have the force of law, and caused the violations of Constitutional rights. <u>Brown v. Wilhelm</u>, 819 F.Supp.2d 41, 44 (D.D.C. 2011).

If a Plaintiff, such as Yelverton, is <u>not</u> a member of a protected class, but is arbitrarily and intentionally treated differently from others who arte similarly situated --- and the state has <u>no</u> rational basis for the disparity ---the individual may qualify as a "class of one" and be entitled to pursue a claim of denial of equal protection of the law under the Fifth Amendment. <u>Kelley v. District of Columbia</u>, 893 F.Supp.2d 115, 122 (D.D.C. 2012).

Being "singled out" for "selective prosecution" is a denial of equal protection of the law under the Fifth Amendment in violation of Section 1983. <u>Branch Ministries v. Rossotti</u>, 211 F.3d 137, 144 (D.C. Cir. 2000).

"Retaliatory prosecution" with no probable cause is a Constitutional violation under the First and Fifth Amendments in violation of Section 1983. Haynesworth v. Miller, 820 F.2d 1245, 1255 and 1257, and n. 93 (D.C. Cir. 1987).

"Substantive due process" violations under the Fifth Amendment are "egregious government misconduct" and "grave unfairness" that is a "deliberate flouting of the law" prompted by personal animus. Elkins v. District of Columbia, 690 F.3d 554, 561-562 (D.C. Cir. 2012); Moore v. District of Columbia, 79 F.Supp.3d 121, 131 (D.D.C. 2015).

Under D.C. Bar Rule XI, Section 19 (a), when a person such as Plaintiff Yelverton files an ethics complaint against an attorney, such as Defendant Smith, there may be no subsequent "retaliation" by Smith or the Office of Disciplinary Counsel for Yelverton filing the complaint because it is absolutely privileged for him to file it.

Under D.C. Bar Rule XI, Section 19 (a), Absolute Immunity does not apply to any Bar official or employee acting outside the scope of their official duties.

Absolute Immunity does not apply to a state official acting in his Official Capacity, or to the government entity. Owen v. City of Independence, 445 U.S. 622, 654 (1980); Singletary v. District of Columbia, 685 F.Supp.2d.81, 88-89 (D.D.C. 2010).

Absolute Immunity does not apply to a prosecutor, or private actor, such as Fox and Smith when performing the investigative functions normally performed by a detective or police officer. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Absolute Immunity does not apply to a prosecutor, such as Fox, giving legal advice to police officers in the investigative phase of a criminal matter. Burns v. Reed, 500 U.S. 478, 492-496 (1991); Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 683 (D.C. Cir. 2009).

7

Absolute Immunity does not apply to a private individual, such as Smith, acting in concert with a state official, such as Fox, to intentionally deprive a person, such as Yelverton, of Constitutional rights. Tower v. Glover, 467 U.S. 914, 923 (1984).

Neither Smith nor Fox, as a state official, would be entitled to Qualified Immunity where the Constitutional right that was violated was "sufficiently established that a reasonable person would have known the conduct violated the Constitution," and the "unlawfulness of the action was apparent in light of pre-existing law." Ford v. Donovan, 891 F.Supp.2d 60, 64 (D.D.C. 2012).

The entitlement of a Defendant to Qualified Immunity is a question of law, although sometimes the material facts establishing the challenged conduct may be a legitimate question of fact decided by a Jury, which must await a Trial. Singh v. District of Columbia, 55 F.Supp.3d 55, 75 (D.D.C. 2014).

Qualified Immunity is an Affirmative Defense, and the burden of pleading it rests with the Defendant in an Answer. Winder v. Erste, 905 F.Supp.2d 19, 29 (D.D.C. 2012). Immunity is alleged by pleadings. Wood v. Moss, 134 S.Ct. 2056, 2067 (2014).

Bar officials may be sued under Section 1983 for Constitutional violation, where in investigating an attorney there is "bad faith" or "harassment" of such attorney. Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982).

The Office of Disciplinary Counsel was put on notice in In Re Sablowsky, 529 A.2d 289 (D.C. 1987), of the lack of Constitutionality of its long-time practice of "deputizing" private attorneys to surreptiously obtain evidence against their rival attorneys of supposed misconduct in order to use to bring charges against a targeted attorney, and where the "deputized" attorney may act as an "agent provocateur."

The Rooker-Feldman Doctrine does not apply to Section 1983 Constitutional claims for monetary damages. Gray v. Poole, 275 F.3d 1113, 1119 (D.C. Cir. 2002).

The allegations in this Complaint are outside the Record of the Hearing, and thus not heard by the District of Columbia Court of Appeals, and are independent of its decision. Stanton v. District of Columbia, 127 F.3d 72, 75-76 (D.C. Cir. 1997), the Rooker-Feldman Doctrine does not apply to injuries whose "discernable core" is independent of the final state judgment, or occurred prior to the final state judgment.

The Rooker-Feldman Doctrine is not applicable because no causes of action against Smith were heard by the District of Columbia Court of Appeals, and it made no decision based upon the allegations of facts and transactions herein. Skinner v. Switzer, 131 S.Ct. 1289, 1297 (2011), holds the Rooker Feldman Doctrine is strictly confined only to "state court losers" seeking rejection and reversal by the Federal court of a final adverse state judgment, and where the damages are from the judgment itself. See also, Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284 (2005).

There is no applicability of Res Judicata from dismissal of the Section 1983 suit against Fox and the Office of Bar Counsel in Case No. 13-cv-314-RWR. The dismissal was solely on the basis of Younger Abstention from jurisdiction. Such dismissal on jurisdictional grounds is without the claims being Res Judicata on the merits.

There is no applicability of Res Judicata in view of the decision of the District of Columbia Court of Appeals not hearing any claims for or against Smith, and where no claims could have been brought against him for momentary damages. Restatement(Second)Judgments, Section 26 (1)(c), cmt c, there is no claims preclusion or Res Judicata, where the claims could not have been brought in the earlier proceeding.

9

The dismissal of the Removal action of the Bar Disciplinary proceeding in Case No. 11-mc-00669-RLW was for lack of jurisdiction, and thus there is no Res Judicata as to the merits of the claims in that proceeding, or as to jurisdiction in this Complaint. Jurisdiction is based upon new facts and new claims. Dozier v. Ford Motor Co., 702 F.2d 1189, 1192 (D.C. Cir. 1983).

Collateral Estoppel is inapplicable because the District of Columbia Court of Appeals declined to hear and resolve any Constitutional claims or allegations of facts as to actions by Smith. Yamaha Corp. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), only where the issue has been fully litigated and determined by a final judgment as to that issue, would Collateral Estoppel be applicable.

The *Twombly* plausibility standard, which applies to all civil actions, does not prevent the Plaintiff from pleading facts alleged "upon information and belief," where the facts are peculiarly within the possession and control of the Defendant, or where the belief is based on factual information that makes the inference of culpability plausible. Evangelou v. District of Columbia, 901 F.Supp.2d 159, 170 (D.D.C. 2012).

Allegation of the Facts

1. Plaintiff, Stephen Thomas Yelverton, was licensed to practice by the District of Columbia Court of Appeals (Bar No. 264044, granted April 10, 1979, on reciprocity),

2. Yelverton had practiced for some 40 years with an unblemished record, had been rated AV Preeminent by Martindale for the highest in legal ethics and legal ability, and had an extensive record of Pro Bono service to Ethiopian immigrants and to African-Americans. This included representing African-American broadcasters and community religious organizations before the Federal Communications Commission.

10

3. The Defendant, Kirk Callan Smith, is a private attorney licensed by the District of Columbia Court of Appeals, who has been practicing and living in the District of Columbia for some 30 years, and through December 2011 until leaving for California.

4. Upon information and belief, Smith had been informally acting for some 20 years on an independent basis as an "informant" and outside "investigator" for the Office of Disciplinary Counsel to bring to it allegations or evidence of ethical violations by members of the Bar, who had been "targeted" by the Office of Disciplinary Counsel for prosecution, or to make unofficial investigations of members of the Bar for his own benefit to provide to the Office of Disciplinary Counsel for prosecution, in order for it to have a steady flow of cases to prosecute. This is based upon public statements by Smith prior to 2011 bragging about his close relationship with the Office of Disciplinary Counsel and about his ability to get it to target any attorney who got in his way.

5. Smith's relationship with the Office of Disciplinary Counsel has been unofficial, and not as an official or a publicly identified staff person, and who is not engaged in official duties for that Office, but is an established custom and policy.

6. The Office of Disciplinary Counsel received notice in 1987 that the above-noted and similar practices of "deputizing" outside private attorneys to unofficially do its work of investigations, and that the surreptitious investigations by "deputized" outside private attorneys of their rival attorneys, was in violation of the Constitutional rights of the attorneys being targeted. See, In Re Sablowsky, 529 A.2d 289 (D.C. 1987).

7. Upon information and belief, the Office of Disciplinary Counsel has not ended its long-time custom and policy of "deputizing" outside private attorneys to be "agent provocateurs" and to unofficially and surreptitiously investigate their rival attorneys.

8. Fox served at all times from April 2009 until the present as Assistant Disciplinary Counsel for the Office of Disciplinary Counsel, and at all times acted under the authority of that Office,, and such alleged actions of his with Smith were knowingly encouraged, approved, caused by, and adopted by the Office of Disciplinary Counsel as the moving force to be its own custom and policies, and upon information and belief, the alleged actions herein of Fox were outside the scope of his official duties.

9. Rebecca Landrith, a former client of Yelverton, executed on June 8, 2012, an Affidavit, under penalty of perjury, showing that Smith, Fox, and the Office of Disciplinary Counsel had been knowingly acting in concert since April 2012 to pressure and foment her to provide evidence of any possible criminal misconduct by Yelverton, and showing that they had agreed with each other to act in concert to retaliate against Yelverton for assisting Landrith in filing ethics complaints against Smith in 2009-2010.

10. The alleged actions by Smith, Fox, and the Office of Disciplinary Counsel to pressure and foment Landrith were in April 2012, and later, which was after the Bar Disciplinary Hearing against Yelverton had ended in February 2012, where Fox and the Office of Disciplinary Counsel had shown no evidence of ethics violations by Yelverton.

11. Fox sent Landrith an e-mail stating that he was angry at her for disclosing his actions against Yelverton, and continued to pressure and foment her to provide adverse and damaging information to use to retaliate against Yelverton.

12. In late June 2012, Fox and Smith pressured and fomented Landrith to send e-mails to Yelverton to inquire as to his relationship with his separated wife, his financial status, his lifestyle and friends, his political activities, his client matters, his client relationship with Michael Snow, whom Smith wanted to sue, and Yelverton's knowledge

and evidence as to specific misconduct by Smith against Landrith in May-June 2009, when they were in a personal relationship, and where Yelverton had assisted Landrith in filing ethics complaints against Smith in 2009-2010.

13. In late June 2012, Landrith, at the demand of Fox and Smith, began barraging Yelverton with scores of e-mails and telephone calls, at 20 or more per day and late at night. When Landrith did not obtain the information that Smith and Fox wanted against Yelverton, she intensified the number of e-mails and telephone calls to Yelverton, who had initiated no e-mails or telephone calls to Landrith.

14. Landrith acknowledged to Yelverton that she had forwarded to Fox and Smith the e-mail responses of Yelverton to her. This was apparent in the questions that she had been asking to Yelverton were of no relevance to her, and were posed as "trap" questions as to matters in which only Smith and Fox would have been interested.

15. On July 9, 2012, under pressure from Smith and Fox, Ms. Landrith filed with MPD a criminal complaint against Yelverton for supposed "e-mail stalking" of her in violation of D.C. Code, Section 22-3133 (a). According to the complaint, Yelverton had allegedly initiated sending to her hundreds of unsolicited e-mails. However, these e-mails had been solicited by Landrith, where she had initiated the e-mails to Yelverton that made unfounded accusations against him, and suggested that if he did not respond, the accusations would be considered true and provided to Fox.

16. The MPD Detective who investigated the complaint was called by Fox to come to the Office of Disciplinary Counsel to be provided "background information on the suspect [Yelverton]" and was told by Fox and the Office of Disciplinary Counsel that Yelverton is a "nasty SOB, who thinks that he is above the law."

17. On information and belief, and based on the above matters, Fox gave legal advice to the MPD Detective as to pursuing the criminal investigation against Yelverton.

18. In August 2012, Yelverton was informed by MPD that on the demand of Fox and the Office of Disciplinary Counsel that it had referred the criminal complaint of Landrith to the U.S. Attorney. Yelverton has no knowledge that the case has been closed.

19. Yelverton has been in fear since 2012 that this criminal complaint to MPD by Landrith, which was fomented by Smith, Fox, and the Office of Disciplinary Counsel, will be used to further punish him for having assisted ethics complaints against Smith.

20. On May 13, 2011, Smith had sent Fox a personal e-mail at the Office of Disciplinary Counsel, where Smith demanded that something be done against Yelverton.

21. Fox and the Office of Disciplinary Counsel have stated to all relevant Courts that Smith did not cause the Specification of Ethics Charges against Yelverton on July 11, 2011, and that Smith was not involved in it, and that Smith was not a witness or complainant in the Bar Disciplinary Hearing against Yelverton in February 2012.

22. Upon information and belief, Smith wanted to discredit and injure Yelverton for assisting Landrith in filing ethics complaints against him in 2009-2010, and as a result, Smith has much personal animus against Yelverton.

23. As being practicing attorneys, both Smith and Fox knew, or should have known, established Supreme Court and D.C. law as to unlawful "retaliation" under D.C. Bar Rule XI, Section 19 (a), against one, such as Yelverton, for filing an ethics complaint against Smith; and the law as to violations by Fox and the Office of Disciplinary Counsel of "substantive due process" under the Fifth Amendment, for fomenting an unfounded criminal investigation of Yelverton, which was done at the behest of Smith.

## Demand for Relief

Plaintiff Yelverton incorporates the Allegations of Facts in paragraphs 1-23, and the controlling law, at pp. 1-10, and Demands monetary damages jointly and severally of at least $150,000, from Smith and Fox for acting in a conspiracy in Fox' Official Capacity as Assistant Disciplinary Counsel, under 42 U.S.C. 1983, to violate the Constitutional rights of Yelverton under the First and Fifth Amendments by "retaliation" to injure Yelverton for having assisted Landrith in making ethics complaints against Smith in 2009-2010. This is a violation of D.C. Bar Rule XI, Section 19 (a), and is a violation of "substantive due process" under the Fifth Amendment, where Smith and Fox intentionally flouted established law to punish Yelverton, as a result of personal animus against him. Smith and Fox had pressured and fomented Landrith to file an unfounded criminal complaint with MPD against Yelverton for supposed "E-mail stalking," and they provided legal advice to the MPD Detective as to pursuing the criminal investigation against Yelverton. As a direct result of the concerted actions and agreement of Smith, Fox, and the Office of Disciplinary Counsel, Yelverton has been injured in his personal and property interests.

## ALTERNATIVE CLAIMS

Plaintiff Yelverton hereby asserts alternative claims, under 42 U.S.C. 1983, against Smith and against Fox in his Official Capacity as Assistant Disciplinary Counsel, by violation of Federal law in 11 U.S.C. 362 (a)(1) and (b)(4). Under FRCP, Rule 8 (a)(3), and (d)(2) and (3), the pleading of claims may be in the alternative, and may even be inconsistent. Plaintiff is allowed to plead as many separate claims as he may have against the Defendants. These alternative claims are related to the other claims herein.

The claims for violation of the Automatic Stay under 11 U.S.C. 362 (a)(1) and (b)(4) were previously submitted to the Bankruptcy Court on February 22, 2016, to be a new Adversary Proceeding under 28 U.S.C. 1334 (b), but were not approved and accepted for filing. In view of this being an Amendment of Right to a pending Complaint that has already been approved and accepted for filing under the Pre-Filing Injunction, there could be no violation of that Injunction. See, Order, entered April 20, 2015, at Docket No. 2, in Case No. 1:15-cv-00552-TSC.

Because the claims were not accepted for filing by the Bankruptcy Court, there could be no Res Judicata or Collateral Estoppel as to these claims.

There moreover could be no Res Judicata or Collateral Estoppel as to the D.C. Court of Appeals with respect to the Bar Disciplinary Hearing because it had no jurisdiction therein to hear any claims under 11 U.S.C. 362 or 42 U.S.C. 1983. Restatement(Second)Judgments, Section 26 (1)(c), and cmt c (1982).

There is a new jurisdictional basis for these alternative claims, which is original jurisdiction of the District Court for claims under 42 U.S.C. 1983.

There is no statute of limitations as to violations of the Automatic Stay under 11 U.S.C. 362. In Re Rothenberg, 173 B.R. 4, 13 (Bkrtcy. D.D.C. 1994). A violation of the Automatic Stay leaves the underlying proceeding as VOID *ab initio*. In Re Lesick, 2006 Bankr. LEXIS 1571 * 18 (Bkrtcy. D.D.C. 2006).

As shown in the Allegations of Fact herein, the private claims by Smith and the Office of Disciplinary Counsel acting on his behalf against Yelverton first arose on April 28, 2009, which was prior to him filing his petition for Bankruptcy on May 14, 2009, under Chapter 11 Reorganization (which was later involuntarily converted to Chapter 7).

As shown in the Allegations of Fact herein, the violations of the Automatic Stay under 11 U.S.C. 362 (a)(1) by Smith and the Office of Disciplinary Counsel occurred after May 14, 2009, and prior to December 3, 2010, when Debtor Yelverton received his Chapter 7 Discharge.

Yelverton has standing as an individual under 11 U.S.C. 362 (k) to pursue these violations of the Automatic Stay, which occurred after his petition for Bankruptcy on May 14, 2009, where the claims after that date belong to the Debtor and not to the Chapter 7 Trustee. Segal v. Rochelle, 382 U.S. 375, 377-380 (1966).

As shown in the Allegations of Fact herein, there are direct, concrete, particularized, and redressable injuries to Debtor Yelverton establishing Article III standing where he has Non-Dischargeable debt of over $1,000,000, for domestic support, and where the damage claims herein would reduce that debt. McGuirl v. White, 86 F.3d 1232, 1234-1236 (D.C. Cir. 1996).

As shown in the Allegations of Fact herein, the actions of Smith and the Office of Disciplinary Counsel on his behalf were to promote and enhance the "private" rights of Smith against Debtor Yelverton, and not to primarily further a "public policy" purpose in executing the "police and regulatory" powers of the Office of Disciplinary Counsel.

The actions of Smith and the Office of Disciplinary Counsel on his behalf are not exempt from the Automatic Stay under 11 U.S.C. 362 (b)(4). In Re Psychotherapy, 195 B.R. 522, 529-530, and n. 13 (Bkrtcy. D.D.C. 1996), citing to In Re Medicar, 166 B.R. 918, 926-927 (N.D. Calif. 1994), holding that government entities, such as the Office of Disciplinary Counsel, "cannot escape" the Automatic Stay under 11 U.S.C. 362 (b)(4), when primarily adjudicating "private rights" under the "guise of public protection."

These decisions are cited as to the rules of law they uphold, and not to the specific facts.  All cases have different facts, but what matters are the rules of law that are applicable to a wide variety of facts.

In accord with <u>Medicar</u> is <u>In Re Quimoda</u>, 425 B.R. 256, 261 (E.D. Va. 2010), which holds that to obtain an 11 U.S.C. 362 (b)(4) exemption from the Automatic Stay, a government entity, such as the Office of Disciplinary Counsel, must primarily pursue its "police and regulatory" powers with a "recognizable public purpose," and it may not be used as a "ruse" to further the private rights of any persons, such as Smith.

The "public purpose/private rights" distinction as to inclusion of government entities in the Automatic Stay, where it is not primarily enforcing "police and regulatory" powers, is the law of every Circuit addressing this issue. <u>Chao v. Hospital</u>, 270 F.3d 374, 383-386 (6th Cir. 2001); <u>Safety-Kleen v. Wyche</u>, 274 F.3d 846, 865 (4th Cir. 2001).

Whether or not a government entity, such as the Office of Disciplinary Counsel, is exempt from the Automatic Stay under 11 U.S.C. 362 (b)(4) is a question of fact, with the burden on the government entity to demonstrate its "public policy" purpose is primary in its actions against the Debtor.  <u>In Re Psychotherapy</u>, 195 B.R., at 531, there must be no deference to a government entity's "unsupported explanations" and "self-serving declarations" as to its supposed "public policy" purpose to defeat the Automatic Stay.

Allegations of Fact

24. On April 28, 2009, Yelverton agreed to represent Michael Snow as the Plaintiff against Mary Carrick in a civil action before the D.C. Superior Court for a "hate crime" assault, where at a public event in March 2009 she had engaged in "gay basing" by repeatedly calling Snow a "faggot' during an altercation that she had initiated.

18

25. Snow had filed the civil complaint *Pro Se* on or about April 10, 2009. Yelverton was thereafter asked by Paul Wagner to represent Snow. Wagner was a long-time personal friend of Snow. Yelverton did <u>not</u> then know Snow and had known Wagner for only some three months.

26.   Wagner and Snow were also long-time personal friends with Kirk Callan Smith, and the three socialized together on a regular basis. Yelverton was <u>not</u> personally acquainted with Smith, but professionally knew of him as an attorney.

27.   Yelverton was told by Wagner and Snow that Cynthia Butler, Esq., would be representing Carrick in her defense against Snow's civil suit. Yelverton did <u>not</u> then know Carrick or Butler, or had ever heard their names.

28. Yelverton was told by Wagner and Snow that their mutual friend, Smith, had encouraged them to retain Yelverton as the best attorney to go against Butler.

29.   At the initial court conference on April 28, 2009, Yelverton appeared for Snow, and Smith unexpectedly appeared for Carrick. This switch of counsel had been agreed to early that morning by Butler and Smith.

30.   The initial court conference was held before the Judge-in-Chambers in his private office outside the courthouse. He directed the parties and their counsel to go out to the hallway to settle the case.

31.   Smith immediately went into a tirade in the hallway and in a loud voice repeatedly accused Yelverton of making false accusations and engaging in malicious prosecution. Smith demanded that Yelverton pay him $8,000 for his legal fees in representing Carrick. When Yelverton refused, Smith became more argumentative and began yelling profanities. The security guards intervened and asked Smith to calm down.

32. Smith became agitated again and threatened to file claims for millions of dollars against Yelverton, who was then publicly perceived as being wealthy.

33. Because of the highly erratic and threatening behavior of Smith, the civil action was dismissed by Snow in early May 2009, without prejudice, under Rule 41 before Smith had filed an answer and counter-claims on behalf of Carrick.

34. On May 14, 2009, Yelverton filed his petition for Chapter 11 Reorganization Bankruptcy in the District of Columbia in Case No. 09-00414, where he then came under the protection of the Automatic Stay. Yelverton had assets of over $2 Million, but was insolvent, and had been insolvent for some time prior to May 14, 2009.

35. Snow had filed an Affidavit with the D.C. Superior Court on April 10, 2009, that he was a Pauper. Both Smith and Carrick had a public reputation of having meager assets and minimal income, and they had made known to friends of their desire to sue targeted persons to get rich, by using the claims of false accusations and malicious prosecution against them.

36. Snow had filed on his own a criminal complaint against Carrick in March 2009 for a "hate crime" assault by engaging in "gay bashing" by calling him a "faggot" during the altercation that she had initiated against Snow at a public event.

37. Yelverton did not represent or assist Snow in the filing of this criminal complaint in March 2009. The D.C. Superior Court in mid-May 2009 had scheduled a criminal trial against Carrick in August 2009, where Smith would be representing her and Snow would be the U.S. Attorney's witness against her.

38. Yelverton no longer represented Snow. However, Smith took repeated actions to draw Yelverton into representing or acting for Snow at the criminal trial.

39. In June 2009, Smith personally served a Subpoena on Yelverton for all of Snow's financial records. This was to be used against Snow when he testified as the witness for the U.S. Attorney at the criminal trial of Carrick in August 2009. Smith had made no request to the U.S. Attorney to provide any information about Snow.

40. Yelverton filed with the criminal court a Motion to Quash the Subpoena. It was heard in July 2009, and was granted. However, in doing so, Yelverton was required to file a Notice of Appearance for Snow as to the criminal proceeding.

41. At the criminal trial on August 17, 2009, which was non-Jury, the Trial Judge acquitted Carrick, and in an oral ruling stated that Snow could not be believed because there were no witnesses to corroborate his testimony.

42. Yelverton was then drawn into a post-Trial "pleading war" by Smith as to whether Snow was a "liar" and whether Yelverton had engaged in making false accusations and in engaging in malicious prosecution against Smith and Carrick. The U.S. Attorney declined to get involved in this matter, or to defend Snow.

43. The Office of Disciplinary Counsel used these post-trial pleadings by Yelverton in defending Snow to institute an ethics inquiry in March 2010 in Bar Docket No. 2010-D128. The Office of Disciplinary Counsel has repeatedly asserted that this Bar Docket is not based upon any ethics complaints by Smith or his client, Carrick.

44. The focus of Bar Docket No. 2010-D128 was to prove that Yelverton had financially harmed Smith, and his client, Carrick, by Yelverton engaging in false accusations against them and in malicious prosecution of them. This is shown by letters of inquiry to Yelverton from the Office of Disciplinary Counsel. Yelverton was granted a Chapter 7 Discharge on December 3, 2010, as to financial claims against him.

45.    On May 13, 2011, Smith sent Fox a personal e-mail at the Office of Disciplinary Counsel, where among other matters Smith demanded that a Hearing be formally brought against Yelverton so that facts could be established to later be sued by Smith and Carrick for financial damages.   On July 11, 2011, Fox instituted a Hearing. proceeding. This is evidence of agreement as to conspiracy between Smith and Fox.

Demand for Relief

Plaintiff Yelverton incorporates the Allegations of Fact in paragraphs. 1-8, 20-22, and 24-45, and the controlling law, at pp. 1-10, and 15-18, and particularly the law as to conspiracy and lack of Immunity under 42 U.S.C. 1983, and demands relief for the claims against him that arose on April 28, 2009, and were pursued in Bar Docket No. 2010-D128, by being found in violation of 11 U.S.C. 362 (a)(1), as claims to ultimately obtain financial damages against Yelverton, which are in contravention of 11 U.S.C. 362 (b)(4), and that Bar Docket No. 2010-D128 be found VOID *ab initio.* *a*nd further that the actions of Smith, Fox, and the Office of Disciplinary Counsel against Debtor Yelverton after May 14, 2009, be found in violation of the Automatic Stay, under 11 U.S.C. 362 (a)(1), and that by conspiracy under 42 U.S.C. 1983, they be found jointly and severally liable for at least $150,000, in monetary damages in substantially interfering with Debtor's Yelverton's Reorganization and his "fresh start" from Bankruptcy.

Demand for Jury Trial

Plaintiff demands a Trial by Jury on all Constitutional claims.

Other Demands

Plaintiff demands, pursuant to 42 U.S.C. 1988 (b), the right to reasonable attorneys fees, and any and all other appropriate Relief as determined by the Court.

## Verification

I, Stephen Thomas Yelverton, Pro Se, the Plaintiff, hereby Verify that the foregoing allegations of fact in all of the Amended Complaint of Right are true and correct, and are believed to be true and correct, to the best of my knowledge and belief, and based upon information and belief, and that this Amended Complaint of Right in all respects is filed in good faith to protect my interests.

This the 25th day of July, 2016,

Respectfully submitted,

Stephen Thomas Yelverton, Plaintiff Pro Se
3033 Wilson Blvd., # E-117
Arlington, VA 22201
Tel. 202-702-6708 (mobile)
E-mail

Service of Summons to be on new additional party:
Hamilton P. Fox, III, Esq., in his Official Capacity as
Assistant Disciplinary Counsel
Office of Disciplinary Counsel
515 Fifth St., N.W., Bldg. A, Room 117
Washington, DC 20001
Tel. 202-638-1501

## CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, Pro Se, hereby certify that a copy of this Amended Complaint of Right was served the 25th day of July, 2016, or the date of Docket Entry, by U.S. Mail. First Class, postage pre-paid, or by e-mail, to the following served party:

Jeffrey M. Sherman, Esq.
1500 N. Oak St., Suite 1826
Arlington, VA 22209
Counsel for Kirk Callan Smith, Esq.

Stephen Thomas Yelverton, Pro Se

**From:** styelv <styelv@aol.com>
**To:** jeffreymsherman <jeffreymsherman@gmail.com>
**Subject:** Fwd: Amended Complaint of Right --- Case No. 1:15-cv-552-TSC Yelverton v. Smith
**Date:** Mon, Aug 1, 2016 2:38 pm
**Attachments:** scan from DC.pdf (3332K)

Attached is a copy of the Amended Complaint of Right that was timely filed with the Clerk on on July 25, 2016.  A paper copy was previously mailed to you, but at 1500 N. Oak St., with an otherwise correct address.

A paper copy was mailed today to you at the correct address of 1600 N. Oak St.,Suite 1826, Arlington, VA 22209.

## CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, *Pro Se*, hereby certify that a copy of this Motion, and the previously and timely filed Amended Complaint of Right and Addition of Party of Right was served the 8th day of August, 2016, by U.S. Mail, First Class, postage pre-paid, and by e-mail to the following:

Jeffrey M. Sherman, Esq.
1600 N. Oak St., Suite 1826
Arlington, VA 22209
Counsel for Kirk Callan Smith, Esq.
jeffreymsherman@gmail.com

Stephen Thomas Yelverton, *Pro Se*

CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, *Pro Se*, hereby certify that a copy of this Opposition to Motion to Dismiss, with attached Amended Pleading of Right that was timely filed, was served the 15th day of August, 2016, by U.S. Mail, first class, postage pre-paid, and by E-mail to the following:

   Jeffrey M. Sherman, Esq.
   1600 N. Oak St., Suite 1826
   Arlington, VA 22209
   Counsel for Kirk Callan Smith, Esq.
   jeffreymsherman@gmail.com


                                 Stephen Thomas Yelverton, *Pro Se*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stephen Thomas Yelverton, Pro Se      )
                                      )      Case No. 1:15-cv-00552-TSC
        Plaintiff                     )
                                      )
          v.                          )
                                      )
Kirk Callan Smith, Esq.               )
                                      )
        Defendant                     )

## ORDER

UPON CONSIDERATION of the Plaintiff's Opposition to Motion to Dismiss,
filed August 15, 2016, IT IS HEREBY ORDERED that the Motion to Dismiss, filed on
July 14, 2016, by the Defendant is DISMISSED without prejudice as being Moot.

The Plaintiff is guaranteed the absolute right to Amend his Complaint once as a
matter of course so long as the Defendant has not served a responsive pleading and the
District Court has not decided a pending Motion to Dismiss the Complaint. See, FRCP,
Rule 15 (a)(1)(B); Scott-Blanton v. Universal City, 244 F.R.D. 67, 69-70 (D.D.C. 2007);
National City Mortgage v. Navarro, 220 F.R.D. 102, 104-105 (D.D.C. 2004); Adams v.
Quattlebaum, 219 F.R.D. 195, 197 (D.D.C. 2004).

The Plaintiff timely filed, pursuant to FRCP, Rule 15 (a)(1)(B), an Amended
Pleading of Right by the due date of August 8, 2016.

The District Court lacks discretion to reject the Amended Pleading that is filed of
right under FRCP, Rule 15 (a)(1)(B). It is simply accepted as filed and is entered into the
Docket as such. Villery v. District of Columbia, 277 F.R.D. 218, 219-221 (D.D.C. 2011).

The Amended Pleading supersedes the original Complaint and the pending Motion to Dismiss the original Complaint is moot, with the Amended Pleading as the operative Complaint. Barnes v. District of Columbia, 42 F.Supp.3d 111, 117 (D.D.C. 2014); National City Mortgage v. Navarro, 220 F.R.D., at 106.

Defendant Smith will be allowed 14 days (plus 3 days for mail time) from the date of issuance of this Order to submit a responsive pleading or a motion under FRCP, Rule 12 (b), with respect to the Plaintiff's Amended Pleading of Right. See, FRCP, Rule 15 (a)(3).

This the _____ day of August, 2016,

_____
Tanya S. Chutkan, United States District Judge

Copies to:

Stephen Thomas Yelverton, Pro Se,
3033 Wilson Blvd., # E-117
Arlington, VA 22201

Jeffrey M. Sherman, Esq.
Law Offices
1600 N. Oak Street, Suite 1826
Arlingtron, VA 22209
Counsel for Kirk Callan Smith, Esq.