UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEPHEN THOMAS YELVERTON**, <br><br> Plaintiff, <br><br> v. <br><br> **KIRK CALLAN SMITH**, <br><br> Defendant. | Case No. 1:15-cv-00552 (CRC) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Yelverton brings suit under 42 U.S.C. § 1983 against fellow D.C. attorney Kirk Callan Smith. Yelverton claims that Smith engaged in a "conspiracy" to bring false disciplinary and criminal complaints against him, in violation of his First, Fifth, and Fourteenth Amendment rights. More specifically, Yelverton alleges the following, rather farfetched, chain of events: Smith, in retaliation for Yelverton's filing of bar disciplinary complaints against him, conspired with Hamilton Fox, the bar counsel who prosecuted separate disciplinary proceedings against Yelverton, to encourage one of Yelverton's former clients, Rebecca Landrith, to report him to the D.C. police for "stalking" her. See Am. Compl. ¶¶ 8–22, July 25, 2016 (Leave to File Granted Sept. 19, 2016), ECF No. 27.

Yelverton filed an initial complaint in April 2015. Compl., ECF No. 1. After a protracted period to allow for service, Smith filed a motion to dismiss in July 2016, primarily arguing that Yelverton's suit was barred by D.C. Bar Rule XI, § 19(a), which prohibits suits arising out of disciplinary complaints. See In re Spikes, 881 A.2d 1118, 1124 (D.C. 2005) (explaining that, under the Rule, "those making . . . complaints [to Bar Counsel] are absolutely immune from [related] suit[s]"). Soon after Smith's first dismissal motion, Yelverton sought to file an amended complaint, which among additional factual allegations, would have added

1

another claim (the purported violation of a bankruptcy stay) and party (Fox, the bar counsel assigned to prosecute disciplinary proceedings against Yelverton).  See Am. Compl.  Smith, in turn, filed a Second Motion to Dismiss, see ECF No. 20, which cited an existing pre-filing injunction against Mr. Yelverton, a serial filer in this court, that prohibited him from filing new actions without leave of court, see In re Yelverton, Case No. 1:13-cv-1544, Aug. 6, 2014 (amended September 9, 2016).  In response, and due in part to an earlier order resolving the bankruptcy stay issue, see Order, Case No. 1:16-mc-00772, ECF No. 10, the Court struck those portions of the amended complaint seeking to add Mr. Fox as a party and those related to the bankruptcy stay.  See Order, Sept. 20, 2016, ECF No. 29.

Smith has now moved to dismiss what remains of the amended complaint, on various grounds.  See Def.'s Third Mot. Dismiss ("Third MTD"), Oct. 19, 2016, ECF No. 31.[1]  In his Opposition, Yelverton has clarified that his sole remaining claim is "against Smith . . . under 42 U.S.C. § 1983 as a 'private actor' in a conspiracy with the Office of [Bar] Disciplinary Counsel to 'retaliate' against . . . Yelverton for having assisted in making ethics complaints against Smith in 2009–2010."  Pl.'s Opp'n Third MTD 2.  Yelverton's theory is that Smith acted "in concert" with bar counsel to induce Landrith, Yelverton's former client, to file a criminal complaint against him.  Id. at 4.

"To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish [1] that [he was] deprived of a right secured by the Constitution or laws of the United States, and

---

[1] Also before the Court are Yelverton's [12] Motion for Defendant to Pay Fees for Service of Summons and [18] Motion to Withdraw IFP Status.  The Court will grant the latter motion but deny the former.  In the Court's judgment, Smith has shown "good cause" under Federal Rule of Civil Procedure 4(d)(2) for declining to sign and return a waiver of service.  In particular, Smith was aware of the pre-filing injunction issued against Yelverton, but was not made aware that Yelverton had sought and received leave to file the instant action.

[2] that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999).  Both of these elements here pose insurmountable hurdles for Yelverton.

First, even if liberally construed, Yelverton's pleadings make out only two possible "depriv[ations]" of his federal legal "right[s]." Sullivan, 526 U.S. at 49.  Yelverton asserts that he was a victim of either "retaliatory" prosecution or "selective" prosecution.  See Am. Compl at 6–7; Pl.'s Opp'n Third MTD 4–5.[2]  Although Yelverton conflates the two theories, they are doctrinally distinct.  To establish retaliatory prosecution, Yelverton must show that: "(1) [his] conduct allegedly retaliated against or sought to be deterred was constitutionally protected; (2) the government's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct; and (3) the government lacked probable cause to bring the criminal prosecution against the appellant." Moore v. Hartman, 571 F.3d 62, 65 (D.C. Cir. 2009).  To establish selective prosecution, Yelverton must show that: "(1) [he] was singled out for prosecution from among others similarly situated and (2) that [the] prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification." Branch Ministries v. Rossotti, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting United States v. Washington, 705 F.2d 489, 494 (D.C. Cir. 1983)).

Yelverton has not alleged facts sufficient for either claim.  As a threshold matter, showing that a prosecution was retaliatory or selective requires showing that there was a *prosecution* in the first instance.  Yelverton has not done this:  Rather, it is clear from his pleadings and briefing that he was never charged as a result of Landrith's complaint.  See Am.

---

[2] Yelverton specifically disavows seeking "recovery . . . for 'malicious prosecution,'" Pl.'s Opp'n Third MTD 4, or bringing any claims under a theory that Smith was a "complaining witness," id. at 6.

Compl. 13–14; Pl.'s Opp'n Third MTD 7.  Even setting aside that fatal defect, Yelverton's claims are deficient for other, independent reasons.  The retaliatory prosecution claim, for instance, also fails because Yelverton has not alleged facts making it plausible that the prosecutor—or any prosecutorial entity—would have been motivated to retaliate against him for filing a D.C. bar complaint.  (It is also unclear, for that matter, whether filing a bar complaint is constitutionally protected activity.)  See Moore, 571 F.3d at 65.  As for the selective prosecution claim, Yelverton concedes that he is a not a member of any recognized protected class, but he wishes to be deemed a "class of one."  See Pl.'s Opp'n Third MTD 5 (citing Kelley v. D.C., 893 F. Supp. 2d 115, 122 (D.D.C. 2012)).  However, such a theory still requires a showing that an individual "has been intentionally treated differently from others *similarly situated* and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (emphasis added).  Yelverton alleges no facts regarding the treatment of any similarly situated comparators.

The second fundamental element of a § 1983 claim is the requirement "that the alleged deprivation [be] committed under color of state law."  Sullivan, 526 U.S. at 49–50.  Yelverton's complaint cannot clear this hurdle, either.  "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful[.]'"  Id. at 50 (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).  Yelverton concedes that Smith is a "private" individual, but he asserts that Smith conspired with a "state actor"—Fox, at the D.C. Office of Bar Counsel—to encourage yet another private individual (Landrith) to file a criminal complaint against him.  Pl.'s Opp'n Third MTD 6; see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982) (explaining that a private person may act "under color" of law when "he is a willful participant in joint activity with the State or its agents").  Under these

alleged circumstances, however, that theory is plainly deficient. Beginning with "the specific conduct of which [Yelverton] complains," Sullivan, 526 U.S. at 51 (quoting Blum, 457 U.S. at 1004), it is self-evident that a private citizen's filing of a criminal complaint is not state action. Furthermore, the only member of the alleged conspiracy whom Yelverton has identified as a supposed "state actor" is Fox. But clearly, to the extent Fox encouraged a private individual to file a criminal complaint with law enforcement officers, he was acting in his individual capacity, not in his official capacity as D.C. bar counsel. Accordingly, the conspiracy Yelverton has alleged, if true, was functionally carried out by three private individuals.

In sum, Yelverton has not plausibly shown that he was deprived of a federally guaranteed right, or that such deprivation was effected "under color" of law. See Sullivan, 526 U.S. at 49–50. Accordingly, it is hereby

**ORDERED** that Defendant's [31] Motion to Dismiss be GRANTED. It is further

**ORDERED** that Defendant's [13] Motion to Dismiss and [20] Motion to Dismiss be DENIED AS MOOT. It is further

**ORDERED** that Plaintiff's [12] Motion for Defendant to Pay Fees for Service of Summons be DENIED. It is further

**ORDERED** that Plaintiff's [18] Motion to Withdraw IFP Status be GRANTED. This is a final, appealable order.

*Christopher R. Cooper*
CHRISTOPHER R. COOPER
United States District Judge

Date: February 14, 2017